IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| THERESA J. S., | CV 21-36-BLG-KLD |
| Plaintiff, | |
| vs. | ORDER |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff brings this action under 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security denying her application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 et seq., § 1381 et seq.

## I.   **Procedural Background**

Plaintiff protectively filed her applications for disability insurance benefits and supplemental security income in August 2018, alleging disability since May 12, 2006, based on physical and mental impairments. (Doc. 7, at 204-212, 216-225). Plaintiff later amended her alleged onset date to November 13, 2012. (Doc. 7, at 19). Plaintiff's claim was denied initially and on reconsideration, and by an ALJ after an administrative hearing. (Doc. 7, at 141-151, 20-35). The Appeals

Council denied Plaintiff's request for review, thereby making the ALJ's decision dated October 20, 2020, the agency's final decision for purposes of judicial review. (Doc. 7, at 5-10). Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

## II.  Legal Standards

### A.  Standard of Review

42 U.S.C. § 405(g) provides a limited waiver of sovereign immunity, allowing for judicial review of social security benefit determinations after a final decision of the Commissioner made after a hearing. See *Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A court may set aside the Commissioner's decision "only if it is not supported by substantial evidence or is based on legal error." *Treichler*, 775 F.3d at 1098 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where evidence is susceptible for more than one rational interpretation," the court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that 'the ALJ's error was

inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).

### B.  Disability Determination

To qualify for disability benefits under the Social Security Act, a claimant bears the burden of proving that (1) she suffers from a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of twelve months or more; and (2) the impairment renders the claimant incapable of performing past relevant work or any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A). See also *Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 and 416.920. If a claimant is found to be "disabled" or "not disabled" at any step, the ALJ need not proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005). The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, the ALJ considers whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). If so, then the claimant is not disabled within the meaning of the Social Security Act.

At step two, the ALJ must determine whether the claimant has any impairments, singly or in combination, that qualify as severe under the regulations. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will proceed to step three.

At step three the ALJ compares the claimant's impairments to the impairments listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii). If the ALJ finds at step three that the claimant's impairments meet or equal the criteria of a listed impairment, then the claimant is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii).

If the ALJ proceeds beyond step three, she must assess the claimant's residual functional capacity. The claimant's residual functional capacity is an assessment of the work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); Social Security Ruling (SSR) 96-8p. The assessment of a claimant's residual functional capacity is a critical part of steps four and five of the sequential evaluation processes.

At step four, the ALJ considers whether the claimant retains the residual functional capacity to perform his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(4)(v). The ALJ may satisfy this burden through the testimony of a vocational expert or by referring to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the ALJ meets this burden, the claimant is not disabled.

## III.   <u>Discussion</u>

The ALJ followed the five-step sequential process in evaluating Plaintiff's claim. At step one, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2017. (Doc. 7, at 22). The ALJ further found that Plaintiff had not engaged in substantial gainful activity since the November 13, 2012 amended alleged onset date. (Doc. 7, at 22). At step two, the ALJ found that Plaintiff had the following severe impairment: inflammatory arthritis. (Doc. 7, at 22). At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled any

impairment described in the Listing of Impairments, 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. pt. 404, subpt. P, app. 1. (Doc. 7, at 22).

The ALJ then found that Plaintiff had the residual functional capacity to perform a range of sedentary work as follows:

> She can be on her feet walking and/or standing for 2 hours in an 8 hour day and sit for 6 hours in an 8 hour day. She can lift 10 pounds occasionally and less than 10 pounds frequently. She cannot climb ladders or scaffolding, and all other postural activities are at the occasional level. She should avoid concentrated exposure to extreme cold and to vibration.

(Doc. 7, at 23). At step four, the ALJ determined that Plaintiff was unable to perform past relevant work as an auto parts clerk/delivery driver. (Doc. 7, at 29). Proceeding to step five, the ALJ concluded there were other jobs existing in significant numbers in the national economy that Plaintiff could perform, including representative occupations such as document preparer, addressing clerk, and order clerk. (Doc. 7, at 30).

Plaintiff argues the ALJ's decision is not supported by substantial evidence, and raises several issues on appeal. First, Plaintiff seems to suggest that the ALJ improperly denied her disability claim because he had previously offered to approve her claim with a different onset date. Second, Plaintiff argues the ALJ erred by omitting several impairments from the list of her severe impairments at step two. Third, Plaintiff contends the ALJ did not provide clear and convincing reasons for discounting her subjective testimony. Fourth, Plaintiff contends the

ALJ improperly assessed the medical opinion evidence. Fifth, Plaintiff maintains the ALJ failed to consider the frequency and duration of her treatment as required by Social Security Ruling (SSR) 96-8p, when assessing Plaintiff's residual functional capacity. Finally, Plaintiff argues the ALJ erred by failing to incorporate all of her impairments and resulting limitations into a hypothetical question presented to the vocational expert.

### A.    ALJ Offer to Approve Claim

Although it is not entirely clear, Plaintiff seems to suggest the ALJ improperly denied her disability claim because he had previously offered to approve her claim with a different onset date. (Doc. 11, at 5; Doc. 13, at 2).

Plaintiff's administrative hearing was held on September 30, 2020.  (Doc. 7, at 36-82). Before taking testimony, the ALJ addressed various administrative and procedural matters with Plaintiff and her counsel. During this preliminary colloquy, the ALJ made the following remarks:

> I'd add one other thing I mentioned and that was that I had made the offer of doing an on, off the record approval of disability in your case with a – with a date that was not your requested date. And I told [Plaintiff's counsel] I was aware that that apparently was not acceptable and I said that's fine, that's her option. But then what we would do during the hearing is cover the entire period of time from the onset, requested onset date coming up to the present.

(Doc. 7, at 40). Plaintiff's counsel confirmed that the ALJ's description of their conversation was accurate, and the hearing proceeded. (Doc. 7, at 41).

Two days before the hearing, Plaintiff's counsel had written the ALJ to

update him on Plaintiff's claim. (Doc. 7, at 309). This letter provides some additional detail regarding her understanding of the ALJ's apparent offer to approve Plaintiff's claim:

> I understand that Your Honor has offered to approve the claimant starting in August 2018 based on the rheumatology records in exhibit 14F suggesting that her symptoms began "a year ago" (exhibit 14F p. 73). That statement refers specifically to the claimant's [rheumatoid arthritis] and Sjogren's symptoms, not her overall chronic pain. [Rheumatoid arthritis] was not diagnosed until 2019, but the claimant has dealt with debilitating chronic pain for more than a decade.

(Doc. 7, at 309). Accordingly, as Plaintiff had rejected the ALJ's offer to amend the alleged onset date, the parties proceeded with the hearing. (Doc. 7, at 40-41). The ALJ ultimately found that Plaintiff was not disabled within the meaning of the Social Security Act at any time from her alleged onset date of November 13, 2012 through the date of the decision. (Doc. 7, at 30).

To the extent Plaintiff takes the position that the ALJ was required to find her disabled from the date offered prior to the hearing, she does not provide any legal authority to support her position. Thus, the ALJ's apparent offer to approve Plaintiff's claim with an amended onset date, which Plaintiff rejected, does not provide a basis for reversal.

## B.   Severe Impairments

Plaintiff argues the ALJ erred by finding that inflammatory arthritis was her only severe impairment, and erred by not also including major depressive disorder,

generalized anxiety disorder, degenerative disc disease, facet arthropathy, L5-S1 signal loss, post-lumbar disk L4-5 fusion, headaches, and Sjogrens as severe impairments at step two. (Doc. 11, at 5).

The step two "inquiry is a de minimis screening device [used] to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1990). At this step in the sequential evaluation process, the claimant has the burden of providing medical evidence of signs, symptoms, and laboratory findings demonstrating that she has a severe impairment or combination of impairments that hast lasted or can be expected to last for a continuous period of not less than twelve months. *Ukolov v. Barnhart*, 420 F.3d 1002, 1004-05 (9th Cir. 2005); *see also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.909, 416.920(a)(4)(ii). A severe impairment is one that significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting Social Security Ruling (SSR) 96-3p).

When the ALJ determines that a claimant has at least one severe impairment, she must consider all impairments, including non-severe impairments, at subsequent steps of the sequential evaluation. *Smolen*, 80 F.3d at 1290. Any error

at step two is harmless when: (1) the ALJ resolves step two in the claimant's favor; and (2) considers the ALJ considers the evidence relating to the omitted impairment in subsequent steps of the disability evaluation. See e.g. *Burch v. Barnhart*, 400 F.3d 676, 682–82 (9th Cir. 2005) (an ALJ's failure to find a particular impairment severe at step two is harmless error where the impairment was considered in determining the claimant's residual functional capacity); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (holding that where the ALJ considered evidence relating to an impairment at step four, any error in failing to identify that impairment as severe at step two was harmless).

Plaintiff argues the ALJ erred by not including depression and anxiety as severe impairments. To support this argument, Plaintiff relies on an October 31, 2018 neuropsychological evaluation report prepared by Dr. Arlis Woods. (Doc. 11, 16). Dr. Woods diagnosed Plaintiff with major depressive disorder, recurrent, severe without psychotic features and generalized anxiety disorder – moderate. (Doc. 7, at 707).  Dr. Woods found that Plaintiff had the ability to perform some work-related mental activities, including the ability to: understand and remember simple and detailed instructions; sustain attention for extended periods of two-hour segments for simple and detailed tasks; tolerate coworkers and supervisors with no limitation in contact with the public; and adapt to routine changes in a work environment. (Doc. 7, at 707). Importantly, Dr. Woods found that Plaintiff's

mental impairments would cause no more than mild limitations in her ability to perform various basic work activities. (Doc. 7, at 708).

Although the ALJ did not address Plaintiff's alleged mental impairments at step two, she considered them later in the sequential evaluation process when evaluating Plaintiff's residual functional capacity. (Doc 7, at 28). The ALJ specifically discussed Dr. Woods's opinion, and found it persuasive. (Doc. 7, at 28). The ALJ also relied on the opinion of the state agency physician, who found that Plaintiff's anxiety and depression were not severe impairments because they caused no more than "mild" limitations in any functional area. (Doc. 7, at 28, 102). Based on the medical opinion evidence, the ALJ reasonably found that Plaintiff did not appear to have any significant mental health limitations and so did not include anxiety or depression as severe impairments at step two.

To the extent Plaintiff argues the ALJ erred by not also addressing notes provided by licensed clinical professional counselor Debra Perrigo (Doc. 11, at 17), any error was harmless. Plaintiff saw Perrigo several times between October 30, 2019 and September 3, 2020. (Doc. 7, at 1128-1179). Perrigo confirmed that Plaintiff had previously been diagnosed with major depressive disorder and generalized anxiety disorder.[1] (Doc. 7, at 1133). In virtually all of her notes,

---

[1] As a licensed professional counselor, Perrigo is considered an "other source" and does not qualify as an acceptable medical source of purposes of diagnosing a mental health condition.  20 C.F.R. § 404.1502(a), 416.902(a).

Perrigo described Plaintiff's symptoms exactly the same way: "Depressed most of the day, feeling sad and empty. Markedly diminished interest in activities and hobbies, insomnia, fatigue or loss of energy, feelings of worthlessness." (Doc. 7, at 1132, 1134, 1136, 1138, 1140, 1142, 1144, 1146, 1148, 1150, 1152, 1154, 1156, 1158, 1160, 1162, 1164, 1166, 1168, 1170, 1172, 1174, 1176, 1178). Perrigo did not identify any mental health limitations, however, or otherwise offer any opinion that Plaintiff's anxiety and depression would significantly limit her ability to perform basic work activities. The ALJ's determination that Plaintiff did not have any severe mental impairments is supported by substantial evidence, and any error in not specifically discussing Perrigo's notes was inconsequential to the nondisability determination. See *Tommasetti v. Astrue,* 533 F.3d 1035, 1038 (9th Cir. 2008) (error is harmless if it is "inconsequential to the ultimate nondisability determination).

Plaintiff further argues the ALJ erred by not including degenerative disc disease, facet arthropathy, L5-S1 signal loss, and post-lumbar disk L4-5 fusion as severe impairments at step two. (Doc. 11, at 5). Although the ALJ did not list any back impairments at step two, he discussed Plaintiff's back impairments and the medical evidence relating to those impairments at subsequent steps. At step three, for example, the ALJ found that Plaintiff's degenerative disc disease did not meet or equal the criteria of Listing 1.04 for disorders of the spine. (Doc. 7, at 22). The

ALJ also considered the medical evidence relating to Plaintiff's back impairments when assessing her residual functional capacity. (Doc. 7, at 24-27). Because the ALJ discussed Plaintiff's back impairments extensively later in the sequential evaluation process, any error in not listing those impairments at step two was harmless. See e.g. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (finding error at step two harmless where the ALJ discussed the omitted impairment at step four of the analysis).

Finally, to the extent Plaintiff maintains the ALJ erred by not including headaches and Sjogrens as severe impairments, she does not point to any medical opinion evidence demonstrating that these particular impairments significantly limited her ability to perform basic work activities. The Court finds that Plaintiff has not met her burden of demonstrating that the ALJ erred at step two.

## C.   **Medical Opinion Evidence**

Plaintiff argues the ALJ failed to give proper weight to the opinion of Dr. Michael Schabacker, a pain management specialist who has been treating Plaintiff at least since March 2013. (Doc. 11, at 12; Doc. 7, at 926-27).

For all claims filed after March 27, 2017, the Social Security Administration has amended the rules regarding the evaluation of medical opinion evidence at the administrative level. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017). Because Plaintiff filed her claim

for disability benefits in August 2018, the amended regulations apply in this case.

The amended regulations do away with the traditional hierarchy between treating, examining, and non-examining physicians, and instead direct the ALJ to consider all medical opinions and prior administrative medical findings, and evaluate their persuasiveness using several listed factors. 20 C.F.R. §§ 404.1520c(a), 416.920(a). Those factors include supportability, consistency, relationship with the claimant, specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(c), 416.920(c). The two most important factors are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), 416.920(a).

While the new regulations eliminate the hierarchy between treating, examining, and non-examining medical sources, the ALJ must still provide legally sufficient reasons supported by substantial evidence for finding a medical opinion unpersuasive. See *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. Apr. 2022) (even under the new regulations, "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence"); *Beason v. Saul*, 2020 WL 606760, *3 (C.D. Cal. Feb. 7, 2020). The "new regulations still require the ALJ to explain his or her reasoning to specifically address how he or she considered the supportability and consistency of the medical opinion." *Brandee M.*, 2021 WL 2781803, at *3 (citing 20 C.F.R. §§

404.1520c, 416.920c). While the ALJ must explain how he considered the supportability and consistency factors in the decision, the ALJ is not generally required to explain how he considered the remaining factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920(b)(2).

Plaintiff first became a patient at the pain center where Dr. Schabacker practices in January 2010. (Doc. 7, at 1180). Since then, Plaintiff has seen Dr. Schabacker for routine pain management approximately four to five times a year. In September 2020, Dr. Schabacker wrote a letter in support of Plaintiff's disability claim. (Doc. 7, at 1180-81). Dr. Schabacker explained when Plaintiff was initially evaluated at his clinic, she "was experiencing significant low back pain with radiation to her left lower extremity," and "[p]hysical examination findings and pain complaints were consistent with objective evidence in the form of imaging studies and documentation from the neurosurgeon" who had previously performed lumbar surgery on Plaintiff. (Doc. 7, at 1180). Dr. Schabacker wrote that he had "observed progressive decline in [Plaintiff's] functional abilities that is consistent with the progressive nature of her back condition," and that he had "documented the decline in [Plaintiff's] functional abilities" in the notes he "prepared following multiple clinic visits." (Doc. 7, at 1180). Dr. Schabacker explained that Plaintiff's back pain was then complicated by the development of polyarticular pain, and following evaluation in the rheumatology clinic she was definitively diagnosed

with "seropositive rheumatoid arthritis multiple sites in addition to Sjogren's syndrome." (Doc. 7, at 1180). Dr. Schabacker indicated that Plaintiff "is significantly limited in her ability to function at home and in the community;" underwent "lumbar fusion with consequent limited lumbar range of motion;" and has "nerve root involvement at the level of her lumbar spine" which affects the function of her left lower extremity and "negatively influences her ability to walk and perform activities." (Doc. 7, at 1181). Dr. Schabacker ultimately concluded that Plaintiff "cannot sustain competitive employment. That is, she cannot work for 4 to 6 hours/day 4 to 5 days/week. She cannot consistently and reliably perform any single or combination of tasks given her pain and impaired function." (Doc. 7, at 1181).

The ALJ considered Dr. Schabacker's opinion but found it unpersuasive for two reasons. (Doc. 7, at 26-27). First, the ALJ remarked that his "opinion essentially indicates that the claimant cannot perform work activity, which is a general statement and one that Dr. Schabacker is not qualified to conclude." (Doc. 7, at 27). A statement by a medical source that a claimant is unable to work is an opinion on an issue reserved to the Commissioner and is not a medical opinion. 20 C.F.R. §§ 404.1527(d), 416.927(d). But the fact that a medical opinion addresses an issue reserved to the Commissioner is not by itself a sufficient reason for rejecting that opinion. See *Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012)

(concluding the ALJ erred by failing to consider an examining psychologist's opinion that the claimant's impairment "makes the likelihood of sustained full time competitive employment unlikely"); *Holohan v. Massanari*, 246 F.3d 1195, 1202-03 (9th Cir. 2001). The ALJ is still required to "consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner." Social Security Ruling (SSR) 95-5p, 1996 WL 374183, at *2 (July 2, 1996).

While Dr. Schabacker's opinion that Plaintiff cannot sustain competitive employment because she cannot work for 4 to 6 hours/day 4 to 5 days/week is essentially a conclusory statement, the ALJ cannot simply dismiss as one that he is not qualified to make.

The ALJ also found that Dr. Schabacker's opinion was not persuasive because it was not consistent with his examination records and findings. (Doc. 7, at 27).  This reason is supported by substantial evidence. See *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (explaining that inconsistency with medical records qualifies as a legitimate reason to discount a treating medical source opinion). By way of example, the ALJ cited Dr. Schabacker's treatment notes from an August 6, 2019 examination. (Doc. 7, at 27). At that visit, Plaintiff reported constant back pain, and described experiencing pain all over her body that was "deep in [her] bones" and was "severe nastiness" (Doc. 7, at 773). But as the ALJ

noted, Dr. Schabacker's physical examination findings reflected that while Plaintiff had back pain, she was negative for falls, joint pain, myalgias, and cervical pain, and she had normal range of motion, no tenderness or deformities, no neurological issues, and no atrophy or tremors. In addition, her coordination and gait were essentially normal. (Doc. 7, at 27, 773-74).

In fact, review of the record shows Dr. Schabacker's physical examination findings were identical during nearly every visit, and consistently reflected that Plaintiff had a normal or unremarkable gait, normal range of motion, and full strength. (Doc. 7, at 366, 370, 374, 384, 388, 392, 395, 399, 403, 407, 419, 426, 430, 443, 456, 722, 775, 792, 809, 999, 1005, 1012, 1016-17). Contrary to Dr. Schabacker's letter opinion, such physical examination findings do not document a decline in functional abilities, and do not reflect a limited lumbar range of motion. Other than remarking on limited lumbar range of motion, Dr. Schabacker did not identify any specific functional limitations in his opinion.

For these reasons, the Court concludes that the ALJ provided an adequate explanation, supported by substantial evidence, for finding Dr. Schabacker's opinion unpersuasive.

### D.   Subjective Symptom Testimony

Plaintiff argues the ALJ failed to provide clear and convincing reasons for discounting her subjective testimony as to severity of her pain and limitations.

(Doc. 11, at 22).

The ALJ must follow a two-step process when evaluating a claimant's subjective symptom testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036. If the claimant meets this initial burden, at step two the ALJ may discredit the claimant's subjective symptom testimony about the severity of her symptoms "only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036.

Here, the ALJ found Plaintiff met her initial burden because she produced evidence of medically determinable impairments that could reasonably be expected to cause her alleged symptoms. The ALJ then found that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical and other evidence in the record. (Doc. 7, at 24).

In September 2018, Plaintiff completed a function report on which she indicated that she could not sit or stand for long periods of time, experienced constant pain in back and legs, and could walk for approximately one quarter of a mile or so before needing to stop and rest. She further reported performing certain

household tasks, including laundry, cooking, doing dishes, and shopping. (Doc. 7, at 262-269). In August 2019, Plaintiff completed a second function report indicating that she was more limited than before. She reported that she could only walk one to two blocks before needing to stop and rest, and did not engage in any household tasks except folding the laundry. (Doc. 7, at 272-281).

The ALJ summarized Plaintiff's subjective complaints as set forth on both function reports, but did not summarize Plaintiff's hearing testimony other than to note that she testified she had driven to Absarokee, a town that is approximately one hour from her home, "three times this year." (Doc. 7, at 27, 70). The ALJ discredited Plaintiff's subjective complaints for three reasons.

First, the ALJ found that while there was some evidence to support Plaintiff's allegations, the objective evidence did not establish that she was as limited as alleged. (Doc. 7, at 24). Following that statement, the ALJ provided a fairly lengthy summary of the medical evidence. (Doc. 7, at 24-27). Contrary to Plaintiff's allegations of disabling pain, the ALJ noted "that several physical examinations contained in the record indicated that [Plaintiff's] physical examination findings were routinely benign." (Doc. 7, at 25). The ALJ cited treatment records provided by Dr. Schabacker indicating that Plaintiff's "physical examination findings were routinely benign." (Doc. 7, at 25). As discussed in more detail above, Dr. Schabacker's physical examination findings consistently reflect

20

that Plaintiff had a normal or unremarkable gait, normal range of motion, and full strength. (See e.g. Doc. 7, at 722, 772). The ALJ permissibly found that Plaintiff's allegations as to the severity of her pain and limitations were not supported by the objective medical evidence. See *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.").

Second, the ALJ cited evidence that Plaintiff stopped working for reasons unrelated to her impairments as a basis for discounting her subjective allegations. (Doc. 7, at 24). An ALJ may discount a claimant's subjective testimony if the claimant stopped working for reasons unrelated to her impairments. See *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). Plaintiff indicated on a disability report form that she stopped working on November 1, 2012 "[b]ecause of [her] conditions." (Doc. 7, at 256). As the ALJ noted, however, at an appointment on November 13, 2012 Plaintiff told a treatment provider that she "lost her job" because the "business that both she and her husband worked at burned to the ground." (Doc. 7, at 326.) The ALJ reasonably found that evidence showing

Plaintiff stopped working for reasons unrelated to her impairments undermined her allegations as to the disabling severity of her pain and limitations. (Doc. 7, at 20).[2]

Third, the ALJ discounted Plaintiff's allegations because, "in one instance, [she] was found by an eye doctor to be malingering." (Doc. 7, at 27). During an eye exam on October 3, 2018, the optometrist found "no response to refraction attempts" and wrote: "Malingering?" (Doc. 7, at 702). An ALJ may discount subject testimony based on evidence of symptom exaggeration. See *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). The ALJ permissibly cited the optometrist's concern that Plaintiff was exaggerating her symptoms as a basis for finding her subjective allegations less than entirely credible.

The Commissioner argues the ALJ also discounted Plaintiff's allegations based on evidence showing that her symptoms improved with treatment. (Doc. 12, at 6). While the ALJ provided a lengthy summary of the medical evidence, it does not appear that he articulated this as a basis for rejecting Plaintiff's subjective

---

[2] Plaintiff argues the ALJ failed to consider her testimony that by the time her job ended, her employer accommodated her impairments by allowing her to leave work when she was in too much pain. (Doc. 7, at 48). Although Plaintiff's earnings records demonstrated that this work was performed at the level of substantial gainful activity, Plaintiff testified that she was only actually working about 12 hours a week. (Doc. 7, at 48). But in her application for benefits, Plaintiff indicated she worked 8.5 per day, five days a week. (Doc. 7, at 257). On this record, Plaintiff has not demonstrated that the ALJ erred by not considering whether her job was an accommodated position.

complaints. (Doc. 7, at 24-28). Even if he had, to say that Plaintiff's symptoms improved with treatment is not a fair reading of Plaintiff's medical records. To be sure, Plaintiff often reported to Dr. Schabacker that her prescribed opiate pain medications were helpful in allowing her to function, but the same treatment records are also replete with references to Plaintiff's ongoing and significant pain. (See e.g. Doc. 7, at, 435-36, 448, 463, 553-54, 562-64, 566, 570, 595, 719-22, 783, 789-90, 799-800, 806-09, 996, 1002, 1008, 1014). To the extent the ALJ found that Plaintiff's symptoms improved with treatment, thereby undercutting her subjective complaints, his reasoning is not supported by substantial evidence.

Finally, to the extent Plaintiff argues the ALJ erred by citing her daily activities as a basis for rejecting her subjective testimony, the Commissioner points out that the ALJ did not in fact find that Plaintiff's activities contradicted her allegations. (Doc. 12, at 7). To the contrary, the ALJ acknowledged that Plaintiff "has reported at times that she is significantly limited in her performance of her daily activities." (Doc. 7, at 23). Thus, the ALJ did find Plaintiff's self-reports unreliable based on evidence of Plaintiff's daily activities.

As discussed above, however, the ALJ provided three reasons that are supported by substantial evidence for rejecting Plaintiff's subjective testimony. Therefore, the Court concludes the ALJ properly discounted Plaintiff's allegations as to the extent of her symptoms and limitations.

**E.    SSR 96-8  frequency and duration of medical treatment.**

Finally, Plaintiff argues the ALJ erred in assessing her residual functional

capacity because the ALJ failed to consider and discuss the effects of her medical

treatment, including specifically the frequency of her medical appointments, as

required by Social Security Ruling (SSR) 96-8p.

SSR 96-8p provides that a residual functional capacity "is an assessment of a

claimant's ability to do sustained work-related activities in a work setting on a

regular and continuing basis." SSR 96-8p,1996 WL 374184, at *1 (July 2, 1996).

"A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an

equivalent work schedule." SSR 96-8p,1996 WL 374184, at *1. SSR 96-8p further

directs that the residual functional capacity assessment must be based on all of the

relevant evidence, including "[t]he effects of treatment, including limitations or

restrictions imposed by the mechanics of treatment (e.g., frequency of treatment,

duration, disruption to routine, side effects of medication)." SSR 96-8p,1996 WL

374184, at *5 (July 2, 1996).

The ALJ's failure to consider the effects of treatment, including the

frequency of medical appointments, may constitute reversible error. *Bourcier v.*

*Saul*, 856 Fed. Appx. 687, 691 (9th Cir. 2021). In *Bourcier*, an unpublished

decision, the Ninth Circuit held without discussion that because the claimant had

"had presented evidence sufficient to establish the possibility that the frequency of

her medical appointments may inhibit her ability to work on a 'regular and continuing basis," the case was properly remanded "for further consideration and development of the record on this issue." *Bourcier*, 856 Fed. Appx. at 691. The Ninth Circuit instructed that on remand, "[t]he ALJ should consider, for example, the need to schedule all appointments during the workweek or workday, the need to miss an entire workday for each appointment, and whether the need for this number of appointments is ongoing." *Bourcier*, 856 Fed. Appx. at 691.

Based on her review of the medical records, Plaintiff claims that she had "two or more monthly visits five months in 2019 and an average of four monthly visits in the first eight months of 2020 prior to the hearing decision." (Doc. 11, at 21). Plaintiff asserts that the ALJ failed to take the frequency of her medical appointments during this period into account, and takes the position that this case must be remanded on this basis alone. The Court does not agree.

The vocational expert testified in response to one of the ALJ's hypotheticals that if an individual required breaks in excess of the two 15 minute breaks normally allowed during a work shift and/or the 30 to 60 minute breaks normally allowed a mid-shift, meaning that the person would need ten minutes or more added on to any or all of the breaks on an occasional basis, and/or the person were to miss more than two days of work in a typical work month on at least an occasional basis, such an individual would not be capable of competitive

employment. (Doc. 7, at 77).  Plaintiff relies on this portion of the vocational expert's testimony to support her argument that the ALJ's failure to consider the frequency of her medical appointments was prejudicial error. (Doc. 11, at 29).

But Plaintiff fails to plausibly explain how the alleged frequency of her medical appointments would result in her requiring breaks in excess of those typically allowed during an 8-hour work shift, or cause her to miss more than two days of work every month. Plaintiff does not point to any medical source opinions in the record stating that Plaintiff would likely be absent from work or need breaks in excess of those typically allowed due to medical appointments or treatment needs. In addition, Plaintiff has presented no evidence that she would not be able to schedule and attend her medical appointments around her work schedule, and/or schedule more than one appointment on the same day. See *Goodman v. Berryhill*, 2017 WL 4265685, at *4 (W.D. Wash. Sept. 25, 2017) (finding the claimant's "narrative citation to the frequency of his medical appointments" during the relevant period unpersuasive, as "[n]o physician opined that [the claimant] would frequently miss work due to medical appointments" and "[n]othing suggests that [the claimant] could not have scheduled his medical appointments outside of working hours"), affirmed by *Goodman v. Berryhill,* 741 Fed. Appx. (9th Cir. 2018) (unpublished).

On this record, the Court finds that the ALJ's failure to address the

frequency of Plaintiff's medical appointments did not affect the ultimate non-disability determination and was, at most, harmless error.  See *Molina v. Astrue*, 674 F.3d 1104, 1111 (9ᵗʰ Cir. 2012) (an ALJ's error is harmless if it does not affect the ultimate non-disability determination); *Shinseki v. Sanders*, 556 U.S. 396, 410 (2009) (the claimant has the burden of demonstrating there are harmful error in the ALJ's decision).

### F.    Vocational Expert

Plaintiff argues the ALJ erred by failing to incorporate all of her impairments into the hypothetical question presented to the vocational expert. Hypothetical questions posted to the vocational expert must set out all the limitations and restrictions of the claimant.  *Embrey v. Bowen,* 849 F.2d 418, 422 (9th Cir.1988).  "The testimony of a vocational expert 'is valuable only to the extent that it is supported by medical evidence.'" *Magallanes v. Bowen*, 881 F.2d 747, 756 (9ᵗʰ Cir. 1989) (quoting *Sample v. Schweiker*, 694 F.2d 639, 644 (9ᵗʰ Cir. 1982)).  If the assumptions in the hypothetical are not supported by the record, then the vocational expert's testimony that the claimant could perform other work existing in the national economy has no evidentiary value. *Embrey*, 849 F.2d at 422.

As discussed above, the Court has determined the ALJ properly weighed medical evidence and provided sufficient reasons for discounting Plaintiff's

testimony. The Court has also determined that any error on the ALJ's part in failing to address the frequency of Plaintiff's medical appointments was harmless. The Court finds that the ALJ was not required to include any additional imitations in the residual functional capacity assessment, which was supported by substantial evidence. See *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989) (the ALJ need not include limitations not supported by substantial evidence). The ALJ permissibly found based on the vocational expert's testimony that Plaintiff was not disabled at step five of the sequential evaluation process.

## IV.   <u>Conclusion</u>

For the reasons discussed above, the Court concludes the ALJ's decision is based on substantial evidence and free of prejudicial legal error. Accordingly,

IT IS ORDERED that the Commissioner's decision is AFFIRMED.

DATED this 31st day of August, 2022.

_____
Kathleen L. DeSoto
United States Magistrate Judge